# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS PENSION, HEALTH AND WELFARE AND DEFERRED SAVINGS PLAN TRUST FUNDS, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 01 C 2458 ) |
| SALMA DARWAN d/b/a ROYAL INTERNATIONAL & DECORATING, INC., a putative corporation n/k/a ROYAL INTERNATIONAL DRYWALL & DECORATING, INC., an Illinois corporation, | ) Judge Rebecca R. Pallmeyer ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On March 9, 2005, this court entered a final judgment of $117,442.19 in favor of Plaintiffs Trustees of the Chicago Painters and Decorators Pension, Health and Welfare and Deferred Savings Plan Trust Funds. Defendant Salma Darwan d/b/a Royal International & Decorating, Inc. moved for reconsideration of several aspects of the court's judgment, this court requested briefing on two discrete claims only: (1) whether final judgment was proper in light of Defendant's counterclaim; and (2) whether the calculation of interest on unpaid contributions was appropriate. For the reasons explained here, the court concludes that its final judgment need not be disturbed, except for a recalculation of the appropriate interest award.

## PROCEDURAL HISTORY[1]

This case arose out of a series of collective bargaining agreements ("CBAs") between

---

[1] A more thorough factual and procedural history appears in the court's previous opinions in this case. *See Trustees of the Chicago Painters and Decorators Pension, Health and Welfare and Deferred Savings Plan Trust Funds v. Darwan*, No. 01 C 2458, 2004 WL 1459553 (N.D.Ill. June 29, 2004)(*Darwan I*); *Trustees of the Chicago Painters and Decorators Pension, Health and Welfare and Deferred Savings Plan Trust Funds v. Darwan*, No. 01 C 2458, 2004 WL 2646667 (N.D.Ill. Nov. 19, 2004)(*Darwan II*).

Defendant and the Painter's District Council No. 14 ("PDC 14"), the Chicago affiliate of the International Brotherhood of Painters and Allied Trades ("the Union"), and the Agreement and Declaration of Trust establishing the Plaintiff Funds (the "Declaration") (together with the CBAs, the "Agreements").  Plaintiffs claimed that Defendant breached the Agreements during the period October 1, 1999 through March 31, 2000 by failing to report and contribute required pension amounts for some of the hours worked by Union employees on drywall taping and finishing work. Defendant filed a counterclaim in which it requested a judgment declaring that it "[did] not owe contributions based on [Plaintiff's] comparison of quantities of drywall purchased by Royal with contributions paid by Royal." Countercl. at 3.  After an eight-day trial in the spring of 2002, the court concluded that Defendant's records were incomplete and unreliable, and that Plaintiffs had established a satisfactory alternative method for determining the number of hours worked by Defendant's employees.  Specifically, in lieu of Defendant's unreliable records, Plaintiff conducted a "material audit," extrapolating the number of hours worked from the amount of raw material Defendant used throughout the period.  Significantly, for the purposes of this opinion, Plaintiff conducted the material audit only for a subset of the period for which it was claiming unpaid contributions: October 1, 1999 through March 31, 2000 (the "Material Audit Period").

After concluding that the material audit was a reliable alternative for calculating the number of hours worked by Defendant's employees, the court asked the parties to submit briefs addressing, among other issues, damages (both within and outside the Material Audit Period) and interest on unpaid contributions.  On November 19, 2004, the court awarded Plaintiff $117,442.19, broken out as follows: $30,508.13 in unpaid contributions for the Material Audit Period; $68,266.16 in liquidated damages; $17,955.82 in accumulated liquidated damages for the period December 1, 1998 through March 31, 2000; and $712.08 in owed payroll and cash disbursements.  With respect to Plaintiff's claim for damages outside the Material Audit Period, the court ordered Defendant to provide records for an equitable accounting using the same material-audit procedure used for the Material

Audit Period. This second audit was intended to address any unpaid contributions for the period December 1, 1998 through September 30, 1999 (the "Supplemental Audit Period.").[2]

The accounting firm retained by Plaintiffs to perform the audit, Levinson Simon & Sprung P.C. ("Levinson"), issued a preliminary audit report on December 14, 2004. *See* December 2004 Audit Report, Ex. B to Def.'s Reply in Support of its Amended Motion to Reconsider (hereinafter "Def.'s Reply"). This report showed unpaid contributions of $2,354.69 for the Supplemental Audit Period.[3] On or about December 16, 2004, Plaintiff served two of Defendant's suppliers, Allied Drywall Materials and Management Corp. ("Allied") and L&W Supply Corp. ("L&W"), with document subpoenas requesting, among other documents, "[a]ll invoices issued by [supplier] to Royal International Drywall & Decorating, Inc." *See* December 2004 Subpoenas, Ex. C to Def.'s Reply in Support of its Amended Motion to Reconsider (hereinafter "Def.'s Reply"). Levinson issued a second audit report on or about January 22, 2005, showing unpaid contributions of $34,190.96 for the Supplemental Audit Period. It is not clear whether this report is based on materials provided in response to Plaintiff's subpoenas. Defendant claims that Plaintiff provided it with copies of the documents received from Allied and L&W sometime in February 2005. *See* Pl.'s Reconsideration Mem. at 3.

Defendant refers to a meeting between the parties and a Levinson auditor, Marie Smith, at some unspecified time after Levinson submitted the January 22, 2005 report. *See* Def.'s Reply at 4. At that meeting, Defendant claims that it "pointed out numerous errors in the audit" and asserted

---

[2] As for the period October 1, 1998 through November 30, 1998, for which Plaintiff had also sought unpaid contributions in its complaint, the court concluded that any claim for that period was barred by a prior release agreement between the parties. *See Darwan II*, 2004 WL 2646667, *6.

[3] It is unclear where Plaintiff obtained the information that was used in this preliminary audit. The report states only that "[f]indings are based on a comparison of drywall materials purchased for the period December 1, 1998 through September 30, 1999 and converted to hours." *See* December 2004 Audit Report, at 1.

that it had, in fact, overpaid contributions to the Funds. *Id.* Defendant claims that this led Plaintiff, at a March 9, 2005 status hearing, to move the court to dismiss its claim for damages for the Supplemental Audit Period. The court granted Plaintiff's motion, over Defendant's objection that its counterclaim was unresolved, and entered judgment in Plaintiff's favor.

This decision precipitated Defendant's motion to reconsider. Defendant's motion attaches a declaration from Hysam Darwan, Royal's president, which purports to show that Defendant is owed money for overpaid contributions. S*ee* Darwan Decl., Ex. 1 to Def.'s Amended Motion to Reconsider (hereinafter "Reconsideration Motion"). Defendant's motion also attaches declarations from Allied and L&W executives that purport to show Defendant's monthly drywall purchases from December 1998 through March 2000, upon which Mr. Darwan based his calculations.[4] *See* White Decl. ¶ 3; Usedom Decl. ¶ 3, Exs. A and B to Darwan Decl. Mr. Darwan claims that these figures demonstrate that Levinson's material audit overstated the amount of drywall that Defendant utilized. Darwan Dec. ¶ 12. Although Plaintiffs do not directly dispute Mr. Darwan's figures, they have produced a third audit report, dated April 7, 2005, which shows Defendant still owing $4,610,58.

## **DISCUSSION**

Citing Rule 41(a)(2), Defendant insists that this court erred in granting final judgment in Plaintiff's favor notwithstanding Defendant's counterclaim. *See* FED. R. CIV. P. 41(a)(2) ("If a counterclaim has been pleaded by a defendant prior to service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court."). Defendant also argues that information obtained from Allied and L&W constitutes "new evidence" that justifies revisiting the court's damages calculation for the Material Audit Period, or, alternatively, justifies off-

---

[4] It is unclear whether Allied and L&W were Defendant's only suppliers during this period, or whether the figures reported by Allied and L&W correspond with invoices produced in response to Plaintiff's subpoena.

4

setting those damages by $23,796.61—the amount Defendant claims it overpaid during the Supplemental Audit Period. Finally, Defendant claims that the court incorrectly calculated interest on the unpaid contribution that the court awarded Plaintiff.

A motion to reconsider served within 10 days of the court's decision is treated as a Rule 59(e) motion. *See United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1986). Applying Rule 59(e), the court will alter its decision "if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *See County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 819 (7th Cir. 2006) (internal quotations omitted). A Rule 59(e) motion is not a vehicle for advancing "arguments or theories that could and should have been made" prior to judgment, *id*. (internal quotations omitted), nor is it "an appropriate forum for rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

### A. DEFENDANT'S COUNTERCLAIM

Plaintiff's Complaint requested unpaid contributions for the period October 1, 1998 through March 31, 2000. Compl. ¶ 8. As previously discussed, at trial the parties presented evidence concerning only the Material Audit Period, a five-month subset of the full period for which Plaintiff had requested relief in its Complaint. Defendant's Counterclaim against Plaintiff on its face simply challenges Plaintiff's theory of recovery: It requests a declaration that Defendant "[did] not owe contributions based on [Plaintiff's] comparison of quantities of drywall purchased by Royal with contributions paid by Royal." Countercl. at 3. Defendant also asks the court to declare that: (1) "[Plaintiff] did not have the right to review records relating to quantities of drywall purchased to determine if Royal has complied with its obligations;" and (2) "[Plaintiff's] request for and/or review of Royal's drywall purchases is not legitimate and/or is imprudent." *Id*.

Defendant argues that the court improperly dismissed, over Defendant's objection, Plaintiff's

5

claim for unpaid compensation during the Supplemental Audit Period. The portion of Rule 42(a)(2) that Defendant relies on applies only in "extremely limited" circumstances, however, where the defendant's counterclaim "[cannot] remain pending for independent adjudication by the court." FED. R. CIV. P. 42(a)(2); Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 2365 (2005). Defendant does not attempt to explain why its counterclaim could not be adjudicated independently. Even if Defendant's counterclaim had requested a declaration that Defendant overpaid contributions (as discussed below, it does not), that claim would not somehow depend on the court retaining jurisdiction over Plaintiff's supplemental claim for underpaid contributions. *Cf.* James W. Moore, MOORE'S FEDERAL PRACTICE, § 41.40[8][a] (3d ed. 1997) ("[A] plaintiff may not dismiss an action when the dismissal would destroy federal jurisdiction and prevent the court from adjudicating the defendant's counterclaim."). So, even if the court accepted Defendant's strained interpretation of its counterclaim as a request for affirmative relief as to the Supplemental Audit Period, that would not support a delay in the entry of final judgment on the portion of Plaintiff's claims that the parties have fully litigated.

A more fundamental problem with Defendant's argument is that there is nothing left to adjudicate, independently or in conjunction with Plaintiff's claims. After an eight-day trial, the court concluded that Defendant owed Plaintiff unpaid contributions for the period October 1, 1999 through March 31, 2000 totaling $30,508.13. The court also held that for the purposes of determining Defendant's obligations, Plaintiff's "material audit" was an accurate alternative to Defendant's own unreliable records. *See Darwan*, No. 01 C 2458, 2004 WL 1459553, *19 (N.D.Ill. June 29, 2004); *cf.* Countercl. at 3 (contesting the validity of the material-audit methodology). Contrary to Defendant's assertions, *see* Def.'s Reply at 7–8, its counterclaim is not a request for affirmative relief: it simply denies any liability whatsoever. *See* Countercl. at 3 (requesting declaration that Defendant "[did] not owe contributions based on [Plaintiff's] comparison of quantities of drywall purchased by Royal with contributions paid by Royal."); *see also Hinfin Realty Corp. v. Pittston Co.*,

6

206 F.R.D. 350, 354 (S.D.N.Y. 2002)(denying defendant's opposition to plaintiff's voluntary motion to dismiss where plaintiff "[did] not have an injury for which it [sought] affirmative relief."). This court's June and November Orders, awarding Plaintiff, among other relief, damages for unpaid contributions, effectively denied Defendant's requested declaration.

Finally, Defendant's claim that it has not had an opportunity to argue the merits of its claim for the Supplemental Audit Period is untenable. As counter-plaintiff, Defendant could have put on evidence pertaining to the Supplemental Audit Period at trial, even if Plaintiff did not. Now, nearly three years after trial, Defendant contends that "new evidence" shows that it is entitled to $23,796.61. *See* Def.'s Reply at 6. This new evidence consists of records of Defendant's *own* drywall purchases from period December 1998 through March 2000. *See* White Decl. ¶ 3; Usedom Decl. ¶ 3. Defendant's claim that this information only came to light in February 2005 when Allied and L&W responded to Plaintiff's subpoena is absurd. Clearly, Defendant had access to information concerning its own purchases, information which Defendant could have (but chose not to) produce at trial. A Rule 59(e) motion is not a vehicle for advancing arguments or presenting evidence that could and should have been presented at trial. *See County of McHenry*, 438 F.3d at 819.[5]

**B.   CALCULATION OF INTEREST**

As the court explained in its November 19, 2004 opinion, the CBAs and the Declaration contain conflicting provisions regarding the interest applicable to unpaid contributions. *See Darwan*, No. 01 C 2458, 2004 WL 2646667, *8 (N.D.Ill. Nov. 19, 2004). Under the CBAs, Plaintiff is entitled to liquidated damages totaling a minimum of 10% of unpaid contributions. *See* CBA, Ex. 4 to Def.'s Reply, at 13. Late contributions also "bear interest at the prime rate established by First

---

[5] Similarly, Defendant's attempt to characterize its counterclaim as a request for a setoff is unavailing. Setoff is an affirmative defense that must be raised at the time an answer is filed, or it is waived. *See* FED. R. CIV. P. 8(c); *Beloit v. C3 Datatec, Inc.*, 78 F.3d 586, (Table, Text in WESTLAW) 1996 WL 102436, *2 (7th Cir. 1996). Consistent with its strategy throughout the litigation, Defendant's counterclaim simply disavows any liability.

National Bank of Chicago." *Id.* The CBAs then cap these two figures at 20% of unpaid contributions absent a resolution by the Joint Board of Trustees. *Id.* In contrast, the Declaration provides for liquidated damages of "$50.00 for each delinquency or liquidated damages in the amount of 1-1/2% per month on the whole amount of contributions remaining from time to time unpaid whichever is greater," and does not cap liquidated damages. *See Darwan II*, 2004 WL 2646667, *7.

While the provisions of the two agreements remain irreconcilable, the court concludes, on reconsideration, that the compromise that it struck in its November 2004 opinion was not appropriate. Defendant claims now (as it did when the court rendered its decision in November 2004) that the trust agreement "[does] not even contain a provision for interest," *see* Reconsideration Motion at 4, and Plaintiff at that time agreed. *See* Pl.'s Mem. Regarding Calculation of Damages, at 6. In its November Order, this court concluded otherwise, stating that Defendant's assertion was "clearly incorrect" and concluding that the Declaration provided for 1.5% "interest" per month. *See Darwan*, 2004 WL 2646667, *8. Using this figure, and compounding interest monthly, the court awarded Plaintiff double interest for a total of $68,266.16. As the court pointed out in its November Order, however, the 1.5% figure is expressly labeled "liquidated damages" in the Declaration. *See Darwan II*, 2004 WL 2646667, *8. Under ERISA's civil enforcement provision, "interest" and "liquidated damages" are distinct concepts. *See* 29 U.S.C. 1132(g)(2) (plan entitled to recover: (a) unpaid contributions; (b) interest on unpaid contributions; and (c) greater of (i) interest on unpaid contributions (i.e., double interest) and (ii) liquidated damages provided for in the plan). The court concludes that it erred in assessing what was, in effect, "double liquidated damages" and not "double interest."

ERISA section 1132(g) provides that if the plan does not state what interest should be applied, then the court shall assess interest at "the rate prescribed under section 6621 of Title 26." *See* 29 U.S.C. §1132(g)(2). Accordingly, interest under the Declaration, which does not provide

8

what interest rate applies to unpaid contributions, must be calculated at the § 6621 rate. *See* 26 U.S.C. § 6621. And under §1132(g)(2), Plaintiff may elect double § 6621 interest, or §6621 interest plus "liquidated damages provided for under the plan in an amount not in excess of 20%." *See* 29 U.S.C. § 1132(g)(2)(C)(i) and (ii). As previously discussed, the Declaration and the CBAs contain conflicting liquidated damages and interest provisions. Although Defendant again insists that Plaintiff is limited to the CBA's interest and liquidated damages provisions, the court sees no reason to revisit its prior determination that Plaintiff is entitled to choose which of the two conflicting provisions to pursue. *See Darwan*, 2004 WL 2646667, *8. Therefore, the court directs Plaintiff to choose a remedy under either the CBA or the Declaration in light of this opinion.

Defendant also claims that the court erred in assessing compound rather than simple interest. This court's determination that interest should be compounded was based on what it perceived to be a "more natural" reading of the Declaration's "interest" provision. *Id.* at *15; *see also So. Central United Food & Commercial Workers Unions v. C&G Markets, Inc.*, 836 F.2d 221, 226 (5th Cir. 1988) ("ERISA does not require that interest be compounded."). In light of this court's conclusion that the Declaration's liquidated-damages provision does not state the applicable "interest" amount, the court withdraws its earlier ruling on the issue and holds that simple interest is the appropriate computation method. *See Carriers Container Council, Inc. v. Mobile Steamship Assoc., Inc. Int'l Longshoresman's Assoc., AFL-CIO Pension Plan and Trust*, 948 F.2d 1219, 1225 (11th Cir. 1991)(simple interest is appropriate under §1132(g)(2)). For the sake of clarification, simple interest applies whether Plaintiff chooses § 6621 interest or the prime rate described in the CBA's. Finally, the court holds that interest shall be assessed from the date the contributions were due until the date judgment was entered, June 29, 2004.

## **CONCLUSION**

Defendant's Amended Motion to Reconsider (103) is granted in part and denied in part. Plaintiff is invited to submit a proposed supplemental judgment order within seven (7) days.

ENTER:

Dated: March 31, 2006

_____
REBECCA R. PALLMEYER
United States District Judge